IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL A. MARLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-cv-911-STE |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on September 21,

2015. (TR. 21-33). The Appeals Council denied Plaintiff's request for review,[1] and Ms. Marler filed an appeal in federal court. (TR. 416-421). The court reversed the decision and remanded the matter because the ALJ improperly rejected the opinion of Dr. Douglas B. Vaughan, Ph.D. (TR. 430-437). Specifically, the court found the ALJ erred by rejecting the decision based on speculation that Dr. Vaughan "relied primarily on [Plaintiff's] subjective statements." (TR. 435-436).

Following a second administrative hearing, a different ALJ issued another unfavorable decision, and Ms. Marler filed an appeal in this Court, seeking a review of that decision. *See* TR. 373-383; ECF No. 1.

## II.    THE SECOND ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from February 15, 2007, her amended alleged onset date, through December 31, 2008, the date she was last insured. (TR. 375). At step two, the ALJ determined that Ms. Marler had the following severe impairments: degenerative joint disease of the bilateral knees, obesity, and depression. (TR. 376). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 376).

---

[1] (TR. 1-4).

At step four, the ALJ concluded that Ms. Marler had no past relevant work, but retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [Plaintiff] should not climb ladders, ropes, or scaffolds (based on body weight). [Plaintiff] can perform simple routine tasks with occasional contact with public.

(TR. 378, 381).

The ALJ then proceeded to make findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified two jobs from the Dictionary of Occupational Titles. (TR. 382-383). Relying upon the testimony of the VE, the ALJ concluded that Ms. Marler was not disabled based on her ability to perform the identified jobs. (TR. 383).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUE PRESENTED

On appeal, Ms. Marler alleges the ALJ erred in the consideration of Dr. Vaughan's opinion. (ECF No. 13:12-21).

## V.   ANALYSIS

### A.   Relevant Law

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). In determining what weight to accord any medical opinion, an ALJ must consider:

(1)   the length of the treatment relationship and the frequency of examination;

(2)   the nature and extent of the treatment relationship;

(3)   the degree to which the physician's opinion is supported by relevant evidence;

(4)   the consistency between the opinion and the record as a whole;

(5)   whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6)   other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Hamlin*, 365 F.3d at 1215, n.7; 20 C.F.R. § 404.1527(c). Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B.   The ALJ's Consideration of Dr. Vaughan's Opinion

Dr. Vaughan performed a psychological consultative evaluation on February 2, 2007, in which he found:

> [Plaintiff] appears capable of understanding and remembering simple but not detailed instructions. She is able to attend and concentrate for simple tasks for brief periods, but it seems she would have marked difficulty sustaining concentration, pace, or persistence for extended period of time. She does not appear capable of interacting socially with the public, supervisors, and coworkers in a competitive or low stress work setting. She does not seem able to adapt to routine work changes and stress in a competitive work setting or low-stress work setting.
>
> In this examiner's opinion, [Plaintiff] is NOT capable of managing her own funds, due to her history of financial mismanagement, gambling, and spending sprees, as well as her poor arithmetic skills.

(TR. 335). Dr. Vaughan also assessed a GAF score of 45. (TR. 335).

At Step Three, the ALJ noted Dr. Vaughan's opinion that Plaintiff was not capable of interacting with supervisors, coworkers, and the general public in a competitive or low stress work setting, but found it was not fully consistent with or supported by his objective findings. (TR. 377). In support, the ALJ addressed objective findings that Plaintiff exhibited pleasant and cooperative behavior, had normal dress and grooming, and was fully oriented to self, place, and time. (TR. 377).

The ALJ also found that Dr. Vaughan's opinion that Plaintiff would have marked difficulty sustaining concentration, pace, and persistence for extended periods appeared

5

inconsistent with Dr. Vaughan's finding that Plaintiff's concentration was fair and that Plaintiff performed well on objecting testing.[2] (TR. 377). The ALJ further found that Dr. Vaughn's opinion that Plaintiff could not adapt to routine work changes and stress was inconsistent with Plaintiff's lack of inpatient mental health treatments, management of depression during the relevant time period exclusively through medication management by her primary care physician, and Plaintiff's report that she was able to go up to three months without any psychotropic medications. (TR. 377-378). The ALJ also found this opinion was inconsistent with Plaintiff's reports of being able to drive a car, manage her personal care without problems, prepare simple meals, perform yardwork and household chores, grocery shop, pay bills, count change, and use a checkbook. (TR. 378).

Later in the decision, the ALJ addressed Dr. Vaughan's opinion as follows:

> First, specifically regarding the GAF score, I note that GAF scores are inherently limited, as they are not an objective measurement, but rather reflect the subjective opinion of the examiner at the time of the examination. Here, Dr. Vaughn's [sic] GAF score appeared inconsistent with his objective findings for the reasons discussed below.
>
> As previously discussed under the B criteria, large portions of Dr. Vaughn's [sic] medical opinion appeared inconsistent with and unsupported by the objective medical evidence as a whole. In short, he gave severely limiting restrictions in interacting with others when his objective findings showed mostly unremarkable appearance and behavior. Dr. Vaughn [sic] also found marked limitations in concentration and persistence despite that [Plaintiff's] good performance on nearly all of the objective concentration testing he administered. Further, Dr. Vaughn [sic] found [Plaintiff] unable to adapt to a routine work setting despite little documented mental health treatment during the relevant two-year period, [Plaintiff's] inconsistent adherence to a psychotropic medication regimen, and her wide range of reported

---

[2] The ALJ noted that Plaintiff recited the English alphabet, counted by threes to 21, spelled the word "world" backwards, named the days of the week backwards, performed reverse serial threes from 100 to 81 with only one error, and counted by serial sevens. (TR. 377).

6

activities of daily living. Accordingly, I gave little weight to Dr Vaughn's [sic] medical opinions.

(TR. 381) (internal citations omitted).

### C. The ALJ Did Not Err in Weighing Dr. Vaughan's Opinion

#### 1. Unreferenced Factors

Plaintiff contends the ALJ did not address "the physician's association with Plaintiff or the nature of his obviously thorough examination" and did not give "obvious consideration" to Dr. Vaughan's specialty as a psychologist. (ECF No. 13:15). The ALJ did not ignore these factors, however, as she specifically noted that Dr. Vaughan "examined [Plaintiff] on a consultative basis." (TR. 379). The ALJ also described the objective examination and the types of objective tests performed. (TR. 377, 379). In addition, the ALJ consistently referred to Dr. Vaughan's doctorate and noted that he performed a mental status examination. (TR. 377, 379). Even if the ALJ's consideration of these factors was deficient, she was not required to explicitly discuss each factor outlined in the regulations. *See Oldham*, 509 F.3d at 1258. Thus, this contention of error is without merit.

#### 2. Dr. Vaughan's Status as an Agency-Chosen Examiner

Ms. Marler contends that because Dr. Vaughan was chosen by the agency to examine Plaintiff, he is a "double expert." (ECF No. 13:15-16 (citing 20 C.F.R. § 404.1527(e)(2)(i))). The regulation cited by Plaintiff states that "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation" and directs ALJs to consider findings and opinions from these sources as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i) (effective Aug. 24, 2012 to

7

Mar. 26, 2017). To the extent this regulation applies, the ALJ satisfied its requirements because she considered Dr. Vaughan's report as opinion evidence.

### 3. GAF Score

Plaintiff takes issue with the ALJ's consideration of Dr. Vaughan's assessment of a GAF score of 45.[3] She first asserts the ALJ erred by finding that GAF scores are limited because they are not objective measurement, but instead reflect the subjective opinion of the examiner at the time of the examination. Further, Plaintiff argues that because the GAF score is inherently subjective, "the ALJ reject[ed] the professional judgment of an expert and replace[ed] it with his own lay interpretation." (ECF No. 13:17). But the ALJ's reasoning for the weight given to the GAF score—that the score reflects the subjective opinion of the examiner at the time of the examination—is a good reason. *See Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) ("The ALJ satisfied [the] requirement [of giving good reasons for the weight assigned to a treating physician's opinion], explaining he gives GAF scores very little weight because they vary daily and represent only a subjective evaluation at a single point in time."). Thus, the ALJ did not err in weighing the GAF score.

### 4. Plaintiff's Symptoms

Ms. Marler contends the ALJ "ignore[d] the substance of Plaintiff's symptoms" (ECF No. 13:17). She notes that Dr. Vaughan's opinion notes "agoraphobic tendencies, anger and irritability, crying spells, and auditory and visual hallucinations, all of which would

---

[3] "A GAF score of 41–50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1123, n.3 (10th Cir. 2004) (internal quotation omitted).

reasonably impact a working relationship between Plaintiff and coworkers and supervisors." (ECF No. 13:17). But, the ALJ addressed Plaintiff's reports of hallucinations, anger, and depression as well as Dr. Vaughan's diagnostic impression of generalized anxiety with features of agoraphobia. (TR. 379). Although the ALJ did not reference Plaintiff's crying spells or irritability, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). Because the ALJ considered Plaintiff's anger and depression, the Court does not find Plaintiff's crying or irritability to be particularly probative. *See id.* at 1010 (An ALJ must "discuss[] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects.").

### 5. Factors About Which Dr. Vaughan was Aware

The ALJ found Dr. Vaughan's restrictions in interacting with others were inconsistent with his finding that Plaintiff showed mostly unremarkable appearance and behavior at the examination. Plaintiff argues that "Dr. Vaughan was undoubtedly aware of Plaintiff's appearance and behavior at the examination, as *he was the one who conducted it*." (ECF No. 13:17). The ALJ, however, may consider whether a medical opinion is inconsistent with other evidence in the report. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). Although Plaintiff argues that being consistent with other evidence does not require "perfect" consistency, as discussed above, the ALJ noted multiple aspects of the objective evidence that were inconsistent

9

with Dr. Vaughan's opinion. "[T]o the extent [Ms. Marler] contends the ALJ erred in weighing the evidence . . . [the Court has] no authority to reweigh it." *Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 619 (10th Cir. 2020) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013)). And while Dr. Vaughan was undoubtedly aware of what he observed and put in his report, it is the ALJ's duty to weigh the opinion based on the appropriate factors.

Plaintiff makes a similar argument regarding other evidence. The ALJ rejected Dr. Vaughan's opinion that Plaintiff was unable to adapt to a routine work setting because of the lack of mental health treatment, the inconsistent adherence to a psychotropic medication regime, and a wide range of reported activities of daily living. (TR. 381). Plaintiff contends Dr. Vaughan was aware of her treatment history and activities of daily living, as he extensively discussed the issues in his opinion. (ECF No. 13:18). Again, Dr. Vaughan's knowledge of information included in his report is not relevant to the inquiry here.[4]

## 6. The ALJ Did Not Mischaracterize Dr. Vaughan's Report

Plaintiff contends the ALJ's finding "grossly mischaracterizes the actual substance of Dr. Vaughan's report." (ECF No. 13:18). She argues that Dr. Vaughan wrote that Plaintiff's memory and concentration were "spotty but adequate for the purposes of this

---

[4] In conjunction with this argument, Plaintiff asserts "that a patient's impairments or symptoms are of a particular level when, as here, they are *not* subjected to full-time work is not necessarily indicative of whether they would remain improved if they *were.*" (ECF No. 13:18-19). Plaintiff speculates that "it is likely precisely for this reason that Dr. Vaughn [sic] was asked by the Agency to conduct his evaluation and offer his opinion on this point." But Plaintiff cites no law in support of this argument.

evaluation" and that her attention and concentration were fair. (TR. 334-335). Further, Plaintiff notes she stopped a test when she became frustrated with making an error, was able to complete one test slowly, and with difficulty, and had poor arithmetic skills. (TR 334). But the ALJ specifically noted that Dr. Vaughan described Plaintiff's concentration as "spotty" and that her attention and concentration was fair. (TR. 377). The ALJ also referenced the error Plaintiff made in one test and stated that Plaintiff "demonstrated some difficulty with calculations." (TR. 377). Based on the ALJ's consideration of such evidence, the Court does not find the ALJ mischaracterized Dr. Vaughan's report as it pertains to the objective tests.

### 7. The ALJ was not Required to Contact Dr. Vaughan

Plaintiff also contends the ALJ could have contacted Dr. Vaughan to inquire about her belief that Dr. Vaughan's opinion was inconsistent with the examination. (ECF No. 13:20-21). In support she cites 20 C.F.R. § 404.1519p(b), which states that "if the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." But this regulation is inapplicable because the ALJ did not find that the report was inadequate or incomplete. Instead, the ALJ found that the opinion should receive little weight. Plaintiff cites no authority suggesting an ALJ is required to contact the author of a medical opinion with whom he or she disagrees.

## 8. Error Considering Daily Activities was Harmless

Finally, Ms. Marler asserts her daily activities were limited and not suggestive of an ability to perform full time work. (ECF No. 13:19). Further, she contends the ALJ overstated her abilities. (ECF No. 13:19). To this point, the Commissioner acknowledged that the ALJ cited activities from a 2014 function report and conceded that "Plaintiff testified that her activities during the relevant period were more limited." (ECF No. 19:17, n.8). The error, however, is not reversible because the ALJ gave other good reasons for the weight given to the opinions. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) ("But even if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting [the treating physician's] opinion."); *Milson v. Berryhill*, No. CIV-17-684-G, 2018 WL 4521220, at *4 (W.D. Okla. Sept. 21, 2018) ("These deficiencies, however, are insufficient to invalidate the ALJ's analysis of Dr. Chaudry's opinion, as the weight ascribed is supported by the other reasons the ALJ articulates.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 20, 2020.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE